IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,

v.

IDALIS MENDEZ

Defendant.

CRIMINAL ACTION
NO. 16-498-03

**OPINION**

**Slomsky, J.**  **July 20, 2023**

I.     **INTRODUCTION**

Defendant Idalis Mendez, who is serving a 151-month sentence, moves for compassionate release. (Doc. No. 317.) In her Motion, Defendant asks the Court to reduce her sentence based on extraordinary and compelling reasons pursuant to 18 U.S.C. § 3582(c)(1)(A)(i). (Id. at 2.) She argues that the Court should grant her Motion because her young age and underlying health conditions "place her at a high risk of serious illness and/or death should she contract the COVID-19 virus again." (Id.) She further argues that her release would be consistent with the relevant 18 U.S.C. § 3553(a) sentencing factors because she is no longer a danger to society.

The Government filed a Response in Opposition. (Doc. No. 326.) In its Response, the Government argues that compassionate release is not warranted here because Defendant has been vaccinated against COVID-19 and contracted the virus "with no apparent medical consequences." (Id. at 1.) Additionally, the Government contends that Defendant's criminal history and time remaining on her sentence also do not entitle her to compassionate release. For reasons that follow, the Motion for Compassionate Release (Doc. No. 317) will be denied.

1

II.     **BACKGROUND**

Defendant Idalis Mendez is presently incarcerated at the Federal Correctional Institution in Aliceville, Alabama ("FCI Aliceville") for her role in sex trafficking and producing and distributing child pornography. Between April and December 2015, Defendant, then nineteen (19) years old, along with three co-defendants including her mother, operated a sex trafficking ring. Defendant recruited three minor females, took pictures of them, posted the pictures in prostitution advertisements, and drove them to and from individuals paying for the minors' sex acts.

On September 13, 2017, a federal grand jury indicted Defendant Idalis Mendez on three counts of sex trafficking a minor, one count of production of child pornography, and one count of distribution of child pornography and aiding and abetting. Defendant's offenses, however, did not end there. While on pretrial release for the above offenses, Defendant contacted one of the minor females she recruited for the sex trafficking organization about setting up a time to meet and discuss the case. As a result, her bail was revoked. On September 14, 2017, Defendant pled guilty to the charged offenses. And on October 24, 2019, Defendant was sentenced to 151 months' imprisonment, 20 years' supervised release, and to pay $16,050 restituion and a $500 special assessment.

She continues to serve her sentence at FCI Aliceville, with an anticipated release date of June 2, 2028. Defendant notes that while incarcerated, she has shown rehabilitation by attending recidivism programs and maintaining a "good disciplinary records and great work ethic." (Doc. No. 317 at 8.) Defendant also states that she no longer is a danger to the community. (Id. at 10.) On October 15, 2020, Defendant sent to the Warden of FCI Aliceville a request for compassionate release, which was denied. On February 15, 2022, Defendant filed the instant pro se Motion for

Compassionate Release requesting that her sentence be reduced pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).  (Doc. No. 317.)

In her Motion, Defendant states that her health is at high risk if she contracts COVID-19 due to her underlying health conditions of asthma, hypertension, mild cardiomegaly, hydrocephaly, obesity, and Vitamin D deficiency.  (Id. at 4.)  Defendant claims that she is particularly vulnerable to contracting the virus because of unsanitary conditions at FCI Aliceville and because safe social distance practices are not being enforced.  (Id. at 5-6.)  Defendant contends that her medical conditions, which are "compelling and extraordinary in the normal scheme of things" but are worse because of the ongoing pandemic, combined with the conditions at FCI Aliceville warrant compassionate release.  (Id. at 4-5.)  Moreover, Defendant points to "her incredibly young age, her lengthy prison sentence, [and] her outstanding institutional adjustment" as further "compelling and extraordinary" reasons for her release.  (Id. at 3.)

In addition, Defendant filed three letters after her Motion for Compassionate Release was filed.  In the first letter, Defendant stated that she was not receiving appropriate medical care at FCI Aliceville for symptoms caused by a malfunction of her ventriculoperitoneal shunt.  (Doc. No. 338 at 1-3.)  In her second letter, she informed the Court that FCI Aliceville has reinstated a lockdown due to an increase in the number of COVID-19 cases and monkeypox and that she was still experiencing symptoms she believed were caused by a malfunction of her shunt.  (Doc. No. 339 at 1.)  In her third letter, Defendant stated that she was transferred to the Federal Correction Institute in Danbury, Connecticut ("FCI Danbury") and participated in a program addressing "the unique treatment needs of women in custody as [they] prepare for reentry."  (Doc. No. 340 at 1.) Defendant also informed the Court about an incident during which she allegedly was punched by another inmate while she was incarcerated at FCI Danbury.  (Id.)  Defendant states that she

3

continues to suffer from nosebleeds, dizziness, migraines, and "sporadic vision loss" and that the correctional officers failed to uphold their "duty to keep prisoners safe and protect them from [reasonably foreseeable] risks" (Id. at 2-3.)

### C. The Government's Response in Opposition to Defendant's Motion for Compassionate Release

On March 30, 2022, the Government filed a Response in Opposition to Defendant's Motion. (Doc. No. 326.) The Government also filed a Response to the letters subsequently filed by Plaintiff. (Doc. No. 341.) In its two Responses, the Government argues that there are no extraordinary and compelling reasons for her compassionate release because vaccines are available and have been proven effective. (Doc. Nos. 326 at 17-19; 341 at 3.) The Government notes that Defendant has been vaccinated for COVID-19 with two Moderna doses. (Doc. Nos. 326 at 7; 341 at 3.) Furthermore, medical records provided by the Government show that Defendant was offered and scheduled to receive a Pfizer booster vaccination six times times, but she did not report to the medical center to receive the booster. (Doc. Nos. 326 at 7; 341 at 3; 342 at 108.)

The Government also submits that Defendant tested positive for COVID-19 in January 2022 and was isolated for eleven (11) days, during which she remained asymptomatic except for an occasional cough. (See Doc. No. 327 at 44.) Regarding Defendant's health, the Government notes that she remains in good health as reflected in her medical records, including one detailing her medical appointment on November 29, 2022. (See Doc. Nos. 341 at 5-6; 342 at 1-3.) Given these developments, the Government submits that while Defendant has risk factors that make her more vulnerable to contracting COVID-19 and to the virus's effects, they are not reasons to grant compassionate release. (See Doc. No. 326 at 25-26.)

The Government further argues that the § 3553(a) sentencing factors do not warrant Defendant's release because her criminal history, length of time remaining on her sentence, and

4

her prior violations of the conditions of her pretrial release, i.e., contacting prior to trial one of the minors she helped recruit, shows that she is a danger to the community. (See id. at 26-28.)

### III.    DISCUSSION

#### A.    The Analytical Framework Regarding Motions for Compassionate Release Pursuant to Section 3582(c)

Generally, a district court "may not modify a term of imprisonment once it has been imposed . . . ." 18 U.S.C. § 3582(c). There are, however, "a few narrow exceptions" to this general "rule of finality[,]" Freeman v. United States, 564 U.S. 522, 526 (2011), including the compassionate release statute, Section 3582(c)(1)(A). As amended by the recently enacted First Step Act, Section 3582(c)(1)(A) empowers a district court to modify a term of imprisonment on a defendant's motion after the defendant has exhausted her administrative remedies.[1] See § 3582(c)(1)(A)(i). The statute provides, in part, that a court:

> may reduce the terms of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in [§ 3553(a)] to the extent that they are applicable, if it finds that—

---

[1] A defendant may file a motion for compassionate release directly with a district court after he "has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier . . . ." 18 U.S.C. § 3582(c)(1)(A). In other words, before a defendant can make such a request to the court, she "must at least ask the Bureau of Prisons (BOP) to do so on [her] behalf and give [the] BOP thirty days to respond[,]" United States v. Raia, 954 F.3d 594, 595 (3d Cir. 2020), and if the BOP does respond adversely within the thirty days, to then exhaust any available administrative appeals during that period. See 18 U.S.C. § 3582(c)(1)(A).

Here, the Government agrees that Defendant has met the exhaustion requirement before filing her Motion. On October 15, 2020, she sent a request for compassionate release to the Warden at FCI Aliceville, and the Warden denied her request. (See Doc. No. 326 at 5-6.) On February 15, 2022, over thirty days after this denial, Defendant filed her Motion seeking compassionate release. (Doc. No. 317.) Because at least thirty days lapsed from the date when the Warden received Defendant's request and denied it to the date when Defendant filed her Motion, she has met the exhaustion requirement.

> (i) extraordinary and compelling reasons warrant such a reduction;
>
> . . .
>
> and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

§ 3582(c)(1)(A). Congress, however, has not defined the term "extraordinary and compelling reasons," except to the extent that "[r]ehabilitation of the defendant alone" is insufficient to constitute an extraordinary and compelling reason. 28 U.S.C. § 994(t). Instead, Congress delegated the authority to define "extraordinary and compelling reasons" to the United States Sentencing Commission. Section 1B1.13 of the Sentencing Guidelines explains that a sentence reduction under Section 3582(c)(1)(A) may be ordered where a court determines:

> [A]fter considering the factors set forth in 18 U.S.C. § 3553(a), . . .
>
> (1) (A) Extraordinary and compelling reasons warrant the reduction; . . .
>  . . .
> (2) the defendant is not a danger to the safety or any other person or to the community, as provided in 18 U.S.C. § 3142(g); and
> (3) the reduction is consistent with this policy statement.

U.S.S.G. § 1B1.13.

Application Note 1 to section 1B1.13 discusses the meaning of "extraordinary and compelling reasons," and lists three specific qualifying circumstances: (1) a defendant's medical condition; (2) age; or (3) family circumstances. § 1B1.13 n.1(A)-(C). This Note states:

> Provided the defendant [is not a danger to the safety of any person or to the community], extraordinary and compelling reasons exist under any of the circumstances set forth below:
>
> (A) Medical Condition of the Defendant
>
>> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

  (ii) The defendant is—

    (I) suffering from a serious physical or mental condition,

    (II) suffering from a serious functional or cognitive impairment, or

    (III) experiencing deteriorating physical or mental health because of the aging process,

    that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

 (B) Age of the Defendant. The defendant

  (i) is at least 65 years old;

  (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and

  (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

 (C) Family circumstances.

  (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.

  (ii) The incapacitation of the defendant's souse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

§ 1B1.13 n.1(A)-(C). Application Note 1 further provides a "catch-all" provision, which allows a court to modify a sentence for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)." § 1B1.13 n.1(D).[2]

---

[2] Although by its express language section 1B1.13 applies to motions brought by the Director of the BOP, the current consensus is that the First Step Act removed this requirement. See generally United States v. Rodriguez, 451 F. Supp. 3d 392, 398 (E.D. Pa. 2020) (considering whether a defendant bringing a direct-to-court motion for compassionate release demonstrated "extraordinary and compelling reasons" and using section 1B1.13 as "helpful guidance.").

The Application Notes only provide "helpful guidance" and are "not ultimately conclusive . . . ." United States v. Rodriguez, 451 F. Supp. 3d 392, 398 (E.D. Pa. 2020) (internal quotation marks omitted) (quoting United States v. Fox, No. 14-03, 2019 2019 WL 3046086, at *3 (D. Me. July 11, 2019)). Since the Sentencing Commission has not yet amended section 1B1.13 or its commentary to account for the First Step Act, a district court has the authority to independently assess whether there are extraordinary and compelling reasons warning a sentence reduction under § 3582(c)(1)(A). See id. at 395.

In general, however, "[i]n the context of the current global pandemic, [c]ourts around the country have [only] granted compassionate release where the defendant suffers from a serious condition that increases the likelihood of severe consequences from COVID-19." United States v. Somerville, 463 F. Supp. 3d 585, 596 (W.D. Pa. 2020) (internal quotation marks omitted) (quoting United States v. Brooks, No. 07-20047, 2020 WL 2509107, at *5 (C.D. Ill. May 15, 2020)). In the Third Circuit, this means that "the mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release . . . ." United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020).

In addition, "[m]ost, though not all, of the cases where compassionate release has been granted also involved some showing that COVID-19 is actually present, usually to a significant degree, in the facility where the prisoner is incarcerated." Somerville, 463 F. Supp. 3d at 596. Thus, "a prisoner seeking release due to COVID-19 must at least show: (1) a sufficiently serious medical condition, or advanced age, placing the prisoner at a uniquely high risk of grave illness or death if infected by COVID-19; and (2) an actual, non-speculative risk of exposure to COVID-19 in the facility where the prisoner is held." Id. at 596-97.

If a district court determines that an extraordinary and compelling reason exists, it must then weigh that reason against the § 3553(a) factors to determine if a sentence reduction is warranted and, if so, the extent of such reduction. See id. at 588 ("[T]he Court must weigh [the] extraordinary circumstances against the ordinary sentencing factors under 18 U.S.C. § 3553(a)."). Section 3553(a) establishes factors for a court to consider in initially imposing a sentence. Not every factor is applicable, however, when considering a motion for compassionate release. In the instant case, the applicable factors are:

> (1) the nature and circumstances of the offense and the history of the characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]
>
> . . . [and]
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct[.]

§ 3553(a)(1)-(2), (6). Therefore, if a balance of a defendant's extraordinary and compelling reasons with the Section 3553(a) factors supports a reduced sentence, and that reduction is consistent with applicable policy statements of the Sentencing Commission, a court may reduce a defendant's prison term, modify the terms of supervised release, or both.

### B. Defendant's Motion for Compassionate Release Will Be Denied

Defendant's Motion for Compassionate Release (Doc. No. 317) will be denied for two reasons. First, her medical conditions do not constitute extraordinary and compelling reasons for her release, particularly since she is fully vaccinated against COVID-19. Second, the relevant § 3553(a) factors do not weigh in favor of compassionate release. Each argument is discussed seriatim.

#### 1. Defendant Has Not Shown an Extraordinary and Compelling Reason for Her Release

To begin, none of Defendant's medical conditions present an extraordinary and compelling reason for her release. Defendant contends that she has shown an extraordinary and compelling reason for her release because her asthma, hypertension, mild cardiomegaly, hydrocephaly, obesity, and Vitamin D deficiency put her at an increased risk for fatal complications if she were to contract COVID-19 while incarcerated at FCI Aliceville. (Doc. No. 317 at 4.) In the Response in Opposition, however, the Government notes that Defendant is vaccinated against COVID-19 and "has contracted and recovered from COVID-19 without incident." (Doc. No. 326 at 17.) The Government also highlights the vaccine's effectiveness in preventing severe illness or death. (See Doc. No. 326 at 7, 17-18.) For this reason, the Government argues that the risk of contracting COVID-19 does not constitute an extraordinary or compelling reason to grant compassionate release "once a vaccine is available to an inmate." (Id. at 18.)

Additionally, the Government notes that given the development of effective vaccines, the fact that Defendant has risk factors that could jeopardize her health if she contracted COVID-19 is not dispositive as vaccines decrease the risk of serious illness or death from COVID-19 infection. (Id. at 17-18.) The Government further explains that Defendant has been fully vaccinated, having received two Moderna doses. (Id. at 7.) Defendant also was scheduled on six separate occasions

10

to receive a Pfizer booster vaccination, but she refused to show up for her appointments. Here, the Court is persuaded by the Government's argument that Defendant's vaccinations decrease the risk of serious illness or death from COVID-19 infection and, therefore, her medical conditions do not warrant compassionate release.

Courts have routinely denied relief to an inmate who has been vaccinated or denies vaccination. See e.g., United States v. Hannigan, No. 19-373, 2022 WL 815449, at *15 (E.D. Pa. Mar. 17, 2022) (stating that vaccination against COVID-19 lessens the risk of serious illness or death, such that the threat of COVID-19, even combined with pre-existing medical conditions, does not constitute an extraordinary and compelling reason for compassionate release); United States v. Berry, No. 09-116, 2021 WL 3537145, at *3 (E.D. Pa. Aug. 11, 2021) (finding that while the defendant suffered from conditions making him more vulnerable to serious illness or death from COVID-19, his vaccination status provided sufficient protection against the risks); United States v. Singh, 525 F. Supp. 3d 543, 548 (M.D. Pa. 2021) (concluding that because Defendant's vaccination mitigated the risk of COVID-19, his underlying medical conditions of type 2 diabetes, obesity, and hypertension, no longer presented extraordinary and compelling reason for compassionate release).[3]

Moreover, Defendant asserts that FCI Aliceville has not provided Defendant with adequate medical care and that conditions there make her more vulnerable to COVID-19, in violation of the Eighth Amendment to the United States Constitution. (See Doc. No. 338 at 2-3). But a compassionate release motion is not an appropriate means of obtaining relief for Defendant's allegations of an Eighth Amendment violations. See United States v. Buckman, No. 14-540-1,

---

[3] Defendant is twenty-seven (27) years old. She does not suffer from a terminal illness or a serious cognitive impairment, and she is not the caregiver of children. Thus, the factors listed in the Sentencing Guideline Manual, see U.S.S.G. § 1B1.13 n.1(B)-(C), are not relevant here.

2020 WL 4201509, at *5 (E.D. Pa. July 22, 2020) ("[The defendant's] claims relate to the manner and conditions of her confinement at Alderson FPC. Claims like these that challenge the execution of sentences are not appropriate in motions for compassionate release.").

### 2. The § 3553(a) Sentencing Factors Do Not Weigh in Favor of Defendant's Release

The relevant § 3553(a) factors do not support Defendant's release from FCI Danbury. First, the Court has examined the nature and circumstances of the offense and Defendant's history and characteristics. See 18 U.S.C. § 3553(a). In pleading guilty to the offense for which she is presently incarcerated, Defendant admitted to recruiting minor females for prostitution and to transporting them to and from the individuals for whom the minors would perform sexual acts in exchange for money. Further, Defendant violated the conditions of her pretrial release by contacting one of the minors she recruited for the sex trafficking organization. Given this background, there is no assurance that Defendant would refrain from criminal activity if released. She still poses a danger to the community. (Doc. No. 317 at 9.)

Second, the Court also has considered whether Defendant's release would reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and protect the public from further crimes by her. See id. § 3553(a)(2)(A)-(C). Moreover, Defendant has served approximately seventy-one (71) months of her 151-month sentence.[4] The magnitude of Defendant's crimes warrants the sentence she received. Despite

---

[4] In United States v. Pawlowski, the Third Circuit held the following regarding § 3553(c)(1)(A)'s requirement that a court reviewing a compassionate release motion consider the § 3553(a) factors:

> Because a defendant's sentence reflects the sentencing judge's view of the § 3553(a) factors at the time of sentencing, the time remaining in that sentence may—along with the circumstances underlying the motion for compassionate release and the need to avoid unwarranted disparities among similarly situated

Defendant's contentions that she "is not a risk to the community" because of "the remarkable turnaround made by [her] over the past years confirms her growth and maturity," a reduction in her sentence at this point would not serve any of the above considerations.

Finally, the Court has considered the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct as Defendant. See 18 U.S.C. § 3553(a)(6). Defendant received a 151-month sentence, below the range set by the Sentencing Guidelines, which Congress created in part to address sentencing disparities, and below even the range advocated for by defense counsel. (See Doc. No. 250 at 14.) In addition, the Government's motion for a downward departure from the Guidelines range was granted. (See Doc. No. 263 at 2-3.) To reduce Defendant's sentence further would not reflect the Sentencing Commission's goal of avoiding unwarranted sentencing disparities among similarly situated defendants and ensuring consistent punishment for similar offenses. Therefore, none of the applicable § 3553(a) factors favor Defendant's release.

### IV. CONCLUSION

For the foregoing reasons, Defendant's Motion for Compassionate Release (Doc. No. 317) will be denied. An appropriate Order follows.

---

inmates—inform whether immediate release would be consistent with those factors.

967 F.3d 327, 331 (3d Cir. 2020).